1          UNITED STATES DISTRICT COURT
2            DISTRICT OF PUERTO RICO

3  FRANCISCA SANTIAGO-NEGRÓN,

4       Plaintiff,

5       v.                              Civil No. 08-1612 (JAF)

6  CARLOS ALBIZU UNIVERSITY, INC.,
7  et al.,

8       Defendants.

9                          **OPINION AND ORDER**

10        Plaintiff, Francisca Santiago-Negrón, brings this action against

11   Defendants, Carlos Albizu University, Inc. ("CAU"); the CAU Board of

12   Trustees;  Jorge  González-Monclova  ("González"),  his  wife,  and  the

13   conjugal   partnership   between   them;   Ileana   Rodríguez-García

14   ("Rodríguez"), her husband, and the conjugal parnership between them;

15   Ángeles Pérez-Toro ("Pérez"), his wife, and the conjugal partnership

16   between them; Carmén Acevedo-Ríos ("Acevedo"), her husband, and the

17   conjugal partnership between them; two unknown CAU trustees; and ten

18   unknown insurance companies.  (Docket No. 1.)  Plaintiff alleges sex

19   discrimination, harassment, and retaliation in violation of Title VII

20   of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to

21   2000e-17, and Title IX of the Education Amendments of 1972 ("Title

22   IX"), 20 U.S.C. §§ 1681-1688; age discrimination, harassment, and

23   retaliation in violation of the Age Discrimination in Employment Act

24   ("ADEA"), 29 U.S.C. §§ 621-634; violation of the Equal Pay Act, 29

1    U.S.C. § 206(d)(1); disability discrimination in violation of the

2    Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213,

3    and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796*l*; and

4    violation of Puerto Rico laws. (Id.) Defendants CAU, the CAU Board

5    of Trustees, González, Rodríguez, Pérez, and Acevedo ("Movants") move

6    for summary judgment under Federal Rule of Civil Procedure 56(c).

7    (Docket Nos. 30, 32.) Plaintiff opposes (Docket No. 40), and Movants

8    reply (Docket No. 51).

9                                    I.

10                      **Factual and Procedural History**

11       We derive the following facts from the parties' motions,

12   statements of uncontested material facts, and exhibits. (Docket

13   Nos. 31, 32, 39, 40, 41, 47, 51, 52, 56.)

14       Plaintiff was born on February 23, 1932. (Docket No. 41-2.)

15   Court records indicate Plaintiff's admission to practice in the

16   District of Puerto Rico and the First Circuit. See Fed. R. Evid. 201.

17   She began working in 1997 for the Caribbean Center for Advanced

18   Studies, which later became CAU.

19       CAU is a non-profit educational institution with campuses in San

20   Juan, Puerto Rico, and Miami, Florida. González was its acting

21   director in early 2007. Rodríguez has been its president since

22   June 18, 2007. Pérez has been employed by CAU since March 2004, but

23   she is not a member of its board of trustees, even though she has

1   recorded the minutes of its meetings. Acevedo has been the director

2   of human resources for CAU's San Juan campus since March 1, 2004.

3        On September 1, 2004, CAU concluded an agreement with Plaintiff

4   to employ her as general counsel for a term of three years concluding

5   on August 31, 2007 (the "first contract"). (Docket No. 31-2 at 10-

6   14.) Under this contract, CAU would, <u>inter alia</u>, pay $95,000 per

7   annum and accord faculty status to Plaintiff. (<u>Id.</u>) In exchange,

8   Plaintiff agreed to work 37.5 hours per week, and to "physically

9   reside in the Miami, Florida area." (<u>Id.</u>) The instrument provided,

10  "No modification or waiver of any of the terms . . . shall be valid

11  unless in writing by both parties and executed with the same

12  formality as this Agreement." (<u>Id.</u>) Finally, CAU and Plaintiff agreed

13  that Puerto Rico law would "govern the validity, construction,

14  interpretation and effect of this entire Agreement." (<u>Id.</u>)

15       On March 28, 2005, Plaintiff's cardiologist, Dr. Héctor Banchs-

16  Pieretti, wrote a letter recommending that Plaintiff reduce her

17  working hours to four hours per day for health reasons. (Docket

18  No. 31-26.) Based on the advice of her doctor, Plaintiff believed

19  that she should live and work closer to the cardiologist during the

20  course of her treatment for hypertension and angina. (Docket No. 31-

21  25.) Upon Plaintiff's request, Plaintiff and CAU negotiated a new

22  contract to accommodate her health needs.

23       On May 4, 2005, CAU and Plaintiff concluded an agreement in San

24  Juan, Puerto Rico, to employ Plaintiff as institutional legal advisor

1    for one year ending on May 5, 2006 (the "second contract"). (Docket

2    No. 31-2 at 16-20; Docket No. 39-2 at 16-20.) Under this second

3    contract, CAU would pay Plaintiff $45.67 per hour for a maximum of

4    twenty hours a week, or 1,040 hours a year, and both CAU vice

5    presidents would supervise Plaintiff's work. (Id.) In exchange,

6    Plaintiff agreed to, inter alia, provide advice to CAU managerial

7    officers, "participate in presidential staff meetings," review legal

8    correspondence to recommend courses of action, "write court documents

9    and motions," and "appear in Court as the legal representative of the

10   University" as necessary. (Id.) The second contract stated, "The

11   arrangements described in this agreement shall govern the contractual

12   relationship between the parties; any verbal agreement shall not be

13   valid." (Id.)

14       After Plaintiff relocated to San Juan, CAU appointed as its

15   legal counsel Arturo Tigera. (Docket No. 31-8.) This role was

16   cumulative to Tigera's previous duties as assistant to the chancellor

17   for administrative affairs. (Id.) On May 23, 2006, CAU adjusted

18   Tigera's total compensation to $98,123 to reflect his updated job

19   description. (Id.)

20       On May 7, 2006, CAU offered a contract to extend Plaintiff's

21   employment as institutional legal advisor for a three-year term from

22   May 8, 2006, to May 7, 2009 (the "third contract"). (Docket No. 31-2

23   at 29-31; Docket No. 39-2 at 29-31.) Addressed to Plaintiff at her

24   office in Santurce, Puerto Rico, the instrument stipulated that CAU

Civil No. 08-1612 (JAF)                                                    -5-

1    would pay Plaintiff $45.67 per hour for twenty hours per week. (Id.)

2    Once again, Plaintiff agreed to, inter alia, advise CAU managerial

3    officers, "participate in presidential staff meetings," review legal

4    correspondence to recommend courses of action, "write court documents

5    and motions," and "appear in Court as the legal representative of the

6    University" as necessary. (Id.) As before, the third contract

7    stipulated, "The arrangements described in this agreement shall

8    govern the contractual relationship between the parties; any verbal

9    agreement shall not be valid." (Id.) Plaintiff signed the instrument

10   on June 12, 2006. (Id.)

11       On January 16, 2007, Plaintiff wrote to González to express her

12   concern over potential changes to her working conditions due to an

13   imminent reorganization of CAU. (Docket No. 31-41; Docket No. 39-2 at

14   48.) The letter references in passing the ADA, ADEA, Rehabilitation

15   Act, and Civil Rights Act with respect to the reasonable

16   accommodation that CAU granted by concluding the second and third

17   contracts. (Id.) Plaintiff informed González that she no longer

18   required the accommodation of working at a reduced schedule, and she

19   offered to negotiate new terms for full-time employment. (Id.)

20   González acknowledged receipt of Plaintiff's letter on January 18,

21   2007. (Docket No. 39-2 at 49.)

22       On February 1, 2007, Plaintiff again wrote to González. (Docket

23   No. 31-46, Docket No. 39-2 at 50-51.) Plaintiff requested

24   reinstatement to full-time work but insisted that she need not

Civil No. 08-1612 (JAF)                                          -6-

1    reapply for a position, as she was already an employee of CAU. (Id.)

2    Plaintiff also complained about her exclusion from presidential staff

3    meetings, which were part of her job description. (Id.) Plaintiff

4    perceived that her exclusion was due to her age because she was the

5    oldest member on the CAU staff. (Docket No. 31-60.) Pérez also told

6    Plaintiff on several occasions that she should go home due to her

7    age. (Docket No. 31-61.)

8         On June 23, 2007, Plaintiff addressed a letter to the CAU Board

9    of Trustees reiterating that she was working under a contract

10   intended to accommodate her health needs. (Docket No. 31-48.)

11   Plaintiff notified the board of trustees that her physician had

12   determined that her health had improved such that she could resume

13   full-time work. (Id.) She then accused CAU of violating her rights as

14   a "75 year old female" by refusing to reinstate her to full-time

15   work; retaining a younger, male employee in Miami in her stead; and

16   preventing her from attending presidential staff meetings. (Id.)

17   Plaintiff then advised CAU that she intended to relocate to Miami on

18   July 9, 2007, to take up her former, full-time position, and she

19   demanded that CAU remove Tigera from his role as legal counsel.

20   (Id.) Plaintiff gave CAU until July 5, 2007, to discuss her demands

21   before her scheduled departure from San Juan. (Id.) Plaintiff

22   perceived that she had suffered disability discrimination because CAU

23   denied her request for reinstatement to full-time work, even though

24   she had fully recovered from her illness. (Docket No. 41-2 at 12.)

On June 26, 2007, Plaintiff addressed two e-mails to Rodríguez, requesting inclusion in presidential staff meetings and reinstatement to full faculty status. (Docket Nos. 41-25, 41-26.) On July 3, 2007, Plaintiff sent Rodríguez an e-mail informing her that it was Plaintiff's last day of work in San Juan and that Plaintiff intended to take up a full-time position in Miami. (Docket No. 31-2 at 63.) Plaintiff advised Rodríguez that she had already contacted one "Theresa" who would prepare a place for her to work in Miami. (Id.)

On July 6, 2007, Rodríguez addressed a letter to Plaintiff in Miami reminding Plaintiff that her work in San Juan had been under the third contract. (Docket No. 31-2 at 66; Docket No. 39-2 at 66.) According to the letter, CAU interpreted Plaintiff's recent communications to mean that she no longer required part-time work and, thus, intended to abandon the third contract. (Id.) Accordingly, CAU cancelled the contract per Plaintiff's request. (Id.)

On July 9, 2007, Beatriz Méndez, the director of human resources at CAU's Miami campus, wrote an e-mail to Acevedo on behalf of Plaintiff requesting clarification of Plaintiff's employment status. (Docket No. 31-2 at 64; Docket No. 39-2 at 64.) Méndez inquired as to whether Plaintiff was authorized to continue working at Miami under her first contract. (Id.) The same day, Acevedo informed Méndez that Plaintiff's third contract had been cancelled per Plaintiff's request. (Docket No. 31-2 at 65; Docket No. 39-2 at 65.) On July 13,

2007, Plaintiff addressed an e-mail to Rodríguez, advising Rodríguez that Plaintiff had received her correspondence dated July 6, 2007, cancelling the third contract. (Docket No. 31-2 at 67.) Plaintiff stated that her earlier communications were requests for reinstatement of her first contract. (Id.) She insisted that she had resumed her first contract and, thus, demanded compensation for her work in Miami since July 9, 2007. (Id.) Rodríguez responded by letter on July 19, 2007, informing Plaintiff that the formation of the second contract had implicitly terminated the first contract. (Docket No. 31-2 at 69; Docket No. 39-2 at 69.) Rodríguez further stated that Plaintiff had no valid contract with CAU, was not authorized to work for CAU and, thus, was not entitled to compensation. (Id.)

On June 2, 2008, Plaintiff filed this action in federal court. (Docket No. 1.) On June 3, 2009, Movants moved for summary judgment. (Docket No. 30.) Plaintiff opposed on July 3, 2009 (Docket No. 40), and Movants replied on July 24, 2009 (Docket No. 51).

## II.

### Summary Judgment under Rule 56(c)

We grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is "genuine" if it could be resolved in favor of

either party and "material" if it potentially affects the outcome of the case.  Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The movant carries the burden of establishing that there is no genuine issue as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  In evaluating a motion for summary judgment, we view the record in the light most favorable to the non-movant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

"Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must 'produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue.'"  Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) (quoting Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999)).  The non-movant "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

## III.

## Analysis

Movants contend that they are entitled to summary judgment because (1) they did not terminate Plaintiff; (2) Plaintiff is otherwise unable to sustain prima facie cases under the ADEA and ADA; (3) they did not retaliate against Plaintiff; and (4) Tigera received a lower salary than Plaintiff while performing more duties for CAU.

1    (Docket No. 32.) We address these arguments with respect to

2    Plaintiff's claims for sex discrimination, age discrimination,

3    hostile work environment, retaliation, unequal pay, and disability

4    discrimination.

5    **A.   <u>Sex Discrimination</u>**

6         Movants argue that Plaintiff cannot prove a prima-facie case for

7    sex discrimination. (Docket No. 32.) Under Title VII, a plaintiff may

8    sue her employer for sex-based discrimination. 42 U.S.C. § 2000e-

9    5(f)(1); <u>see id.</u> § 2000-2(a) (outlawing sex-based discrimination).

10   Absent direct proof of sex discrimination, a plaintiff must meet her

11   burden under a burden-shifting framework. <u>Smith v. Stratus Computer,</u>

12   <u>Inc.</u>, 40 F.3d 11, 15 (1st Cir. 1994).

13                    [T]he plaintiff bears the initial burden of
14                    establishing a prima facie case . . . [by]
15                    show[ing] that (1) she is a member of a
16                    protected class; (2) she was performing her job
17                    at a level that rules out the possibility that
18                    she was fired for inadequate job performance;
19                    (3) she suffered an adverse job action by her
20                    employer; and (4) her employer sought a
21                    replacement for her with roughly equivalent
22                    qualifications.

23   <u>Id.</u> (citing <u>Mesnick v. Gen. Elec. Co.</u>, 950 F.2d 816, 823 (1st Cir.

24   1991)). If the plaintiff satisfies this first step, the employer must

25   then "articulate[] a legitimate, non-discriminatory reason for its

26   decision." <u>Id.</u> at 16. "The plaintiff must then introduce sufficient

27   evidence to . . . [show] (1) that the employer's articulated reason

28   for the job action is a pretext, and (2) that the true reason is

discriminatory." Id. (citing Woods v. Friction Materials, Inc., 30 F.3d 255, 260 (1st Cir. 1994)).

Title IX similarly prohibits sex-based discrimination by educational institutions receiving federal funds, 20 U.S.C. § 1681(a), and may be enforced by private causes of action, Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60, 76 (1992). The burden-shifting framework under Title VII applies to claims under Title IX. Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 65-66 (1st Cir. 2002).

## 1.   **Termination**

Movants argue that no adverse job action occurred, because they never terminated Plaintiff. (Docket No. 32.) Plaintiff maintains that Defendants terminated her employment under the first contract. (Docket No. 40.) We address two relevant contractual principles.[1]

Under the Civil Code of Puerto Rico, parties to a contract may modify or extinguish their obligations by novation. 31 L.P.R.A. §§ 3241-3242 (1990).  To extinguish an obligation under an existing

---

[1] Puerto Rico law governs Plaintiff's and CAU's obligations under all three contracts.  Generally, we look to the Puerto Rico choice-of-law rule to resolve conflicts of law. Servicios Comerciales Andinos, S.A. v. GE del Caribe, 145 F.3d 463, 478-79 (1st Cir. 1998).

Although it is unclear where the first contract was made, the parties stipulated that Puerto Rico law applied to the contract. (Docket No. 31-2 at 10-14.) However, even if Florida law governed the validity of the first contract as a whole, Florida recognizes reasonable choice-of-law provisions in contracts, Burroughs Corp. v. Suntogs of Miami, Inc., 472 So. 2d 1166, 1167-68 (Fla. 1985), and the parties do not contest the validity of the choice-of-law clause. The second and third contracts were made in Puerto Rico for the performance of services in Puerto Rico (Docket No. 31-2 at 16-20; Docket No. 31-2 at 29-31; Docket No. 39-2 at 16-20; Docket No. 39-2 at 29-31); thus, Puerto Rico law applies to them. See Green Giant Co. v. Trib. Super., 4 P.R. Offic. Trans. 682, 104 P.R. Dec. 489 (1975).

1    contract, either the parties must expressly substitute their prior

2    obligation with another obligation, or the new obligation must "be

3    incompatible in all points" with the previous. § 3242. "An extinctive

4    novation's occurrence is never presumed." Nieves-Domenech v. Dymax

5    Corp., 952 F. Supp. 57, 62 (D.P.R. 1996) (citing Constructora Bauzá,

6    Inc. v. García-López, 91 PRSC 735, 129 P.R. Dec. 579 (1991)).

7    "[T]here must be a radical change in the nature between the new and

8    old obligation so as to make them mutually exclusive." Web Servs.

9    Group, Ltd. v. Ramallo Bros. Printing, 336 F. Supp. 2d 179, 182

10   (D.P.R. 2004) (citing Goble & Jiménez, Inc. v. Dore Rice Mill, Inc.,

11   8 P.R. Offic. Trans. 90, 108 P.R. Dec. 89 (1978)); accord FDIC v.

12   P.L.M. Int'l, Inc., 834 F.2d 248, 251 (1st Cir. 1987). "[A]

13   quantitative change" that leaves "intact the essential structure of

14   the parties' obligations [does] not reflect the will to novate."

15   Ballester Hermanos, Inc. v. Campbell Soup Co., 797 F. Supp. 103, 107

16   (D.P.R. 1992) (citing Warner Lambert Co. v. Trib. Super., 1 P.R.

17   Offic. Trans. 527, 101 P.R. Dec. 378 (1973)).  As novation is an

18   affirmative defense, Fed. R. Civ. P. 8(c)(1), a defendant bears the

19   burden of proving its occurrence. Web Servs. Group, 336 F. Supp. 2d

20   at 183 (citing Union Mut. Life Ins. Co. v. Chrysler Corp., 793 F.2d

21   1, 13 (1st Cir. 1986)).

22        The Civil Code also provides for termination of contractual

23   obligations arising from breach. 31 L.P.R.A. § 3052 (1990). "The

24   right to [resolve] obligations is considered as implied in mutual

ones, in case one of the obligated persons does not comply with what is incumbent upon him." Id. The "resolution" of a contract retroactively suspends the obligations of the parties under the contract.  Id. § 3050; see 2 Marcel Planiol, Treatise on the Civil Law § 1302 (La. State Law Inst. trans. 1959) (1939). Resolution is premised upon the implied reciprocity of obligations under contracts, such that the failure of one party to tender its performance gives the other party the right to demand  suspension of his reciprocal obligation.  Planiol, supra, § 1309.

Plaintiff concluded three contracts with CAU. As the second contract makes no reference to the first contract (Docket No. 31-2 at 16-20; Docket No. 39-2 at 16-20), the parties could not have extinguished the first contract by express novation.  See 31 L.P.R.A. § 3242.  Although the second contract reduced Plaintiff's weekly working hours from 39.5 hours in the first contract to twenty hours (Docket No. 31-2 at 16-20; Docket No. 39-2 at 16-20; Docket No. 31-2 at 10-14), a mere quantitative change is insufficient for implicit novation.  See Ballester Hermanos, 797 F. Supp. at 107.

Nevertheless, whereas the first contract required Plaintiff to reside in Miami, Florida (Docket No. 31-2 at 10-14), the second contract unequivocally required her attendance of presidential staff meetings in San Juan, Puerto Rico (Docket No. 31-2 at 16-20; Docket No. 39-2 at 16-20).  Moreover, the second contract required Plaintiff to represent CAU in court when necessary. (Id.) It appears that

Civil No. 08-1612 (JAF)                                              -14-

1    Plaintiff is only authorized to practice law in this court and in the

2    Court of Appeals for the First Circuit. (Docket No. 31-2 at 23-26.)

3    We take judicial notice of the fact that the federal court in Miami

4    is situated in the Eleventh Circuit, while the First Circuit

5    encompasses Puerto Rico. It was, therefore, impossible for Plaintiff

6    to simultaneously fulfill her obligations under both the first and

7    second contracts after her relocation to San Juan in May 2005.

8    Accordingly, Plaintiff and CAU extinguished the first contract by

9    implicit novation when they formed the second contract on May 4,

10   2005. See Web Servs. Group, 336 F. Supp. 2d at 182.

11       On July 3, 2007, Plaintiff's third contract was still in force.

12   (Docket No. 31-2 at 29-31; Docket No. 39-2 at 29-31.) However,

13   Plaintiff unequivocally informed CAU on that day that she intended to

14   leave San Juan for Miami indefinitely, under the belief that the

15   first contract was still enforceable. (Docket No. 31-2 at 63.) Her

16   subsequent actions were consonant with her stated intentions.

17       Like the second contract, Plaintiff's third contract required

18   her to attend CAU presidential staff meetings and to represent CAU in

19   court as necessary. (Docket No. 31-2 at 29-31; Docket No. 39-2 at 29-

20   31.) As she could not fulfill these obligations upon her return to

21   Miami, CAU had the right to resolve the third contract and to suspend

22   CAU's obligations to Plaintiff. See 31 L.P.R.A. § 3052. Because of

23   her breach, Plaintiff had no further employment relationship with CAU

24   under the third contract. As CAU did not terminate Plaintiff from

1   employment under either the first or the third contract, she cannot

2   establish a claim for discriminatory discharge under either Title VII

3   or Title IX. See Fairhaven Sch. Comm., 276 F.3d at 65-66; Stratus

4   Computer, 40 F.3d at 15.

5       **2.   Replacement by Tigera**

6       Movants also argue that Plaintiff cannot otherwise establish a

7   prima-facie case for sex discrimination. (Docket No. 32.) Plaintiff

8   contends that her replacement by Tigera supports a claim for sex

9   discrimination. (Docket No. 40.)

10      Plaintiff demanded, and obtained, reduced working hours and

11  relocation to San Juan to benefit her health. (See Docket No. 31-2 at

12  16-20; Docket No. 39-2 at 16-20; Docket No. 31-2 at 29-31; Docket

13  No. 39-2 at 29-31.) CAU then retained Tigera for full-time work as

14  legal counsel in Miami. (See Docket No. 31-8.) It is improper for

15  Plaintiff to blame CAU for replacing her when she herself had created

16  the need for CAU to find a substitute. As Plaintiff cannot show that

17  CAU's selection of Tigera in her stead was an adverse employment

18  action, she cannot establish sex discrimination. See Fairhaven Sch.

19  Comm., 276 F.3d at 65-66; Stratus Computer, Inc., 40 F.3d at 15.

20  **B.   Age Discrimination**

21      Movants maintain that Plaintiff cannot establish a prima-facie

22  case for age discrimination. (Docket No. 32.) Plaintiff counters that

23  her termination and replacement with Tigera constitute age

24  discrimination. (Docket No. 40.)

Civil No. 08-1612 (JAF)                                                -16-

1        To prove a prima-facie case for age discrimination without

2    direct proof, a plaintiff "must adduce evidence that (1) she was at

3    least forty years of age; (2) her job performance met the employer's

4    legitimate expectations; (3) the employer subjected her to an adverse

5    employment action . . . ; and (4) the employer had a continuing need

6    for the . . . position from which the claimant was discharged."

7    González v. El Día, Inc., 304 F.3d 63, 68 n.5 (1st Cir. 2002). If the

8    plaintiff satisfies this initial burden, the defendant must posit "a

9    legitimate, non-discriminatory basis for its adverse employment

10   action." Id. at 69. The plaintiff must then show that age was,

11   nonetheless, a motivating factor, for example, by attacking the

12   proffered reason as pretextual. Id.

13       The foregoing discussion on sex discrimination applies here,

14   mutatis mutandis, with equal force, as Plaintiff cannot show that CAU

15   terminated her or that she suffered an adverse employment action with

16   respect to her replacement by Tigera in Miami. See supra part III-A.

17   The facts are the same, and the necessary prima-facie showings for

18   sex and age discrimination are virtually identical. Compare Stratus

19   Computer, 40 F.3d at 15, with El Día, 304 F.3d at 68 n.5.

**C.   Hostile Work Environment**

21       Movant argues that the facts generally cannot support prima-

22   facie cases for Plaintiff's claims under Title VII or the ADEA.

23   (Docket No. 32.) Plaintiff argues that negative comments by Pérez

24   regarding Plaintiff's age support her claims. (Docket No. 40.)

Civil No. 08-1612 (JAF)                                           -17-

1    To establish a claim for "hostile work environment" sexual

2    harassment under Title VII, a plaintiff must show:

3              (1) that she . . . is a member of a protected
4              class; (2) that she was subjected to unwelcome
5              sexual harassment; (3) that the harassment was
6              based upon sex; (4) that the harassment was
7              sufficiently severe or pervasive so as to alter
8              the conditions of plaintiff's employment and
9              create an abusive work environment; (5) that
10             sexually objectionable conduct was both
11             objectively and subjectively offensive, such
12             that a reasonable person would find it hostile
13             or abusive and the victim in fact did perceive
14             it to be so; and (6) that some basis for
15             employer liability has been established.

16   Crowley v. L.L. Bean, Inc., 303 F.3d 387, 394-95 (1st Cir. 2002).

17   The standard for severity and pervasiveness of workplace hostility

18   must be sufficiently demanding so as to avoid transforming Title VII

19   into a general code of civility. Faragher v. City of Boca Raton, 524

20   U.S. 775, 788 (1998). Thus, "sporadic use of abusive language,

21   gender-related jokes, and occasional teasing" do not suffice to

22   establish a prima facie case.  Id.

23   The record is devoid of evidence of abusive treatment toward

24   Plaintiff because of her sex. Therefore, Plaintiff cannot establish

25   her claims for sexual harassment. See Crowley, 303 F.3d at 394-95.

26   To establish hostile work environment under the ADEA, a

27   plaintiff must show both that the severity and pervasiveness of the

28   harassment were objectively abusive and that she subjectively

29   perceived the environment to be hostile. Rivera-Rodríguez v. Frito

30   Lay Snacks Caribbean, 265 F.3d 15, 24 (1st Cir. 2001) (citing

1    Landrau-Romero v. Banco Popular de P.R., 212 F.3d 607, 613 (1st Cir.

2    2000)). "When assessing whether a workplace is a hostile environment,

3    courts look to the totality of the circumstances, including the

4    frequency of the discriminatory conduct; its severity; whether it is

5    threatening or humiliating, or merely an offensive utterance; and

6    whether it unreasonably interferes with the employee's work

7    performance." Id. (citing Landrau-Romero, 212 F.3d at 613).

8         The sole evidence of abuse against Plaintiff is her assertion

9    that Pérez suggested that Plaintiff go home on several occasions on

10   account of her age. (See Docket No. 31-61.) Although Plaintiff

11   perceives that she was excluded from presidential staff meetings due

12   to her age, there is no indication that this exclusion constituted

13   pervasive hostility toward Plaintiff. (See Docket No. 31-60.)

14   Accordingly, Plaintiff cannot establish her claim for age-based

15   harassment under the ADEA. See Rivera-Rodríguez, 265 F.3d at 24.

16   **D.   Retaliation**

17        Movants contend that Plaintiff cannot establish her claims for

18   retaliation under either Title VII or the ADEA. (Docket No. 32.) To

19   establish a claim for retaliation, a plaintiff must satisfy her

20   burden in accordance with a burden-shifting framework. See Calero-

21   Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25-26 (1st Cir. 2004).

22   For a prima-facie case of retaliation under Title VII, a plaintiff

23   must "prove that (1) she engaged in protected conduct under Title

24   VII; (2) she suffered an adverse employment action; and (3) the

adverse action was causally connected to the protected activity."
Marrero v. Goya of P.R., Inc., 304 F.3d 7, 22 (1st Cir. 2002) (citing
Hernández-Torres v. Intercon. Trading, Inc., 158 F.3d 43, 47 (1st
Cir. 1998)). Similarly, to establish retaliation under the ADEA, a
plaintiff must show that (1) she opposed age discrimination at work;
(2) she suffered an adverse employment action; and (3) there is a
causal connection between the protest and the adverse action.
Ramírez Rodríguez v. Boehringer Ingelheim Pharms., Inc., 425 F.3d 67,
84 (1st Cir. 2005).

Plaintiff complained to CAU as early as January 16, 2007, citing
Title VII and the ADEA. (Docket No. 31-41; Docket No. 39-2 at 48.)
However, as discussed above, CAU did not terminate Plaintiff under
either her first or third contract. See supra part III.A.1. As
Plaintiff did not suffer an adverse employment action, she cannot
establish her claims under Title VII and the ADEA for retaliation.
See Ramírez Rodríguez, 425 F.3d at 84; Marrero, 304 F.3d at 22.

**E.   Equal Pay Act**

Movants contend that Plaintiff cannot establish her case under
the Equal Pay Act. (Docket No. 32.) Under the Equal Pay Act, an
employer may not discriminate "between employees on the basis of sex
by paying wages . . . at a rate less than the rate at which he pays
wages to employees of the opposite sex . . . for equal work on jobs
the performance of which requires equal skill, effort, and
responsibility, and which are performed under similar working

1   conditions, except where such payment is made pursuant to (i) a

2   seniority system; (ii) a merit system; (iii) a system which measures

3   earnings by quantity or quality of production; or (iv) a differential

4   based on any other factor other than sex." 29 U.S.C. § 206(d)(1).

5   To establish a claim, a plaintiff must show "that the employer paid

6   different wages to specific employees of different sexes for jobs

7   performed under similar working conditions and requiring equal skill,

8   effort and responsibility." Ingram v. Brink's, Inc., 414 F.3d 232,

9   232 (1st Cir. 2005).

10      In support of her claim under the Equal Pay Act, Plaintiff cited

11  Tigera for comparison. (Docket No. 40.) However, Tigera's

12  remuneration is based upon his assumption of duties as legal counsel

13  in Miami in addition to his previous administrative role for CAU.

14  (See Docket No. 31-8.) Moreover, Plaintiff worked at a reduced

15  schedule upon her own insistence. (See Docket No. 31-25.) As

16  Plaintiff cannot show that Tigera's working conditions were similar

17  to hers, she cannot establish a claim under the Equal Pay Act. See

18  Ingram, 414 F.3d at 232.

19  **F.   <u>Disability Discrimination</u>**

20      Movants argue that Plaintiff cannot establish her claims under

21  the ADA and Rehabilitation Act. (Docket No. 32.) Plaintiff insists

22  that CAU discriminated against her by refusing to reinstate her to

23  full-time employment after she regained her health. (Docket No. 40.)

For an adverse employment action under the ADA, a plaintiff must prove that she was (1) disabled under the ADA; but (2) "able to perform, with or without reasonable accommodation, the essential functions of her job;" and (3) "discharged or adversely affected, in whole or in part, because of her disability." Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc., 447 F.3d 105, 111 (1st Cir. 2006). "A disability under the ADA is defined as (1) a physical or mental impairment that substantially limits one or more of a person's major life activities; (2) a record of having such an impairment; or (3) being regarded as having such an impairment." Sánchez-Figueroa v. Banco Popular de P.R., 527 F.3d 209, 214 (1st Cir. 2008) (citing 42 U.S.C. § 12102(2)). The impairment must have permanent or long-term effect, in order "to be considered substantially limiting within the meaning of the ADA." Id. at 214-15 (citing Toyota Motors Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002)).

The Rehabilitation Act authorizes private enforcement. 29 U.S.C. § 794a.

> To assert a claim for failure to accommodate under the Rehabilitation Act, [a plaintiff] would have to establish . . . (1) that she suffered from a "disability" . . . ; (2) that she was a qualified individual in that she was able to perform the essential functions of her job, either with or without a reasonable accommodation; and (3) that, despite her employer's knowledge of her disability, the employer did not offer a reasonable accommodation for the disability.

Calero-Cerezo, 355 F.3d at 20.

Civil No. 08-1612 (JAF)                                          -22-

Plaintiff has misconstrued the purpose of the ADA and the Rehabilitation Act. Her claim is premised upon CAU's refusal to reinstate her to full-time work after she recovered her health. (Docket Nos. 1, 40.) As Plaintiff cannot show that she suffered an adverse employment action on the basis of her disability, she cannot establish her claims under the ADA or the Rehabilitation Act. See Orta-Castro, 447 F.3d at 111; Calero-Cerezo, 355 F.3d at 20.

**G.   Claims under Puerto Rico Law**

As we order summary judgment in favor of Movants on all federal claims, we decline to exercise supplemental jurisdiction over Plaintiff's associated claims under Puerto Rico law. See 28 U.S.C. § 1367(c)(3); Rivera v. Murphy, 979 F.2d 259, 264 (1st Cir. 1992).

**H.   Unknown Defendants**

Plaintiff had 120 days from the filing of her complaint to substitute unknown defendants with actual defendants, unless she provided good cause for an extension. See Fed. R. Civ. P. 4(m). Plaintiff has had ample time to amend her complaint and to serve process on proper defendants but has failed to do so without positing good cause. We, therefore, dismiss all unknown Defendants.

Civil No. 08-1612 (JAF)                                        -23-

1                                    **IV.**

2                              **Conclusion**

3          Accordingly,  we  hereby  **GRANT**  Movants'  motion  for  summary

4     judgment  (Docket  No.  30).  We  **DISMISS**  all  federal  claims  (Docket

5     No.  1)  **WITH PREJUDICE,**  and  **DISMISS**  all  claims  under  Puerto  Rico  law

6     (id.)  **WITHOUT PREJUDICE.**

7          **IT IS SO ORDERED.**
8
9          San  Juan,  Puerto  Rico,  this  25th  day  of  August,  2009.
10
11                                       s/José Antonio Fusté
12                                       JOSE ANTONIO FUSTE
13                                       Chief U.S. District Judge